

# SUPREME COURT OF MISSOURI
## en banc

IN THE MATTER OF THE JOINT )     *Opinion issued August 15, 2023*
APPLICATION OF MISSOURI- )
AMERICAN WATER COMPANY AND )
DCM LAND, LLC, FOR A VARIANCE )
FROM THE COMPANY'S TARIFF )
PROVISIONS REGARDING THE )
EXTENSION OF COMPANY MAINS, )
                                   )
         Respondent, )
                                     )
v. )     No. SC99978
                                     )
OFFICE OF PUBLIC COUNSEL, )
                                     )
         Appellant. )

## APPEAL FROM THE MISSOURI PUBLIC SERVICE COMMISSION

The Office of the Public Counsel ("Public Counsel") appeals the order of the Public Service Commission ("the Commission"), granting the joint application of Missouri-American Water Company ("Water Company") and DCM Land, LLC, ("DCM") for variances from Water Company's tariff, absent explicit language in the tariff that allows for variances. Public Counsel raises three points on appeal: (1) the Commission erred in granting the variances because the Commission does not have legal authority to grant the variance requests; (2) even if the Commission had the legal authority to grant the requested

variances, the Commission did not establish "good cause" to approve a variance; and (3) the Commission's decision was unduly discriminatory. The Commission's order is reversed, and the case is remanded with directions for the Commission to enter an order in accordance with this opinion.

**Facts and Procedural History**

DCM, a developer, is building the Cottleville Trails subdivision ("the Development") in St. Charles County, Missouri, in the service area of Water Company and Public Water Supply District No. 2 of St. Charles County ("Water District No. 2"). Due to a territorial agreement between Water Company and Water District No. 2, the Development is in Water Company's exclusive territory. Water Company is a "water corporation" and "public utility" as defined in § 386.020.[1] The services provided by Water Company are subject to a tariff,[2] which is approved by the Commission. The Development is located in the "St. Louis Metro District" for purposes of Water Company's tariff.

Water Company and DCM submitted a joint application with the Commission seeking three variances from Rule 23 in Water Company's tariff, which governs the funding of water main extensions. The requested variances, together, would effectively increase Water Company's responsibility and decrease DCM's responsibility for the cost of a water main extension.

---

[1] All statutory references are to RSMo 2016 unless indicated otherwise.
[2] A tariff is "a document published by a public utility, and approved by the [C]ommission, that sets forth the services offered by that utility and the rates, terms, and conditions for the use of those services." 20 C.S.R. 4240-3.010(28).

2

The first requested variance was from the language of Rule 23A.2, which states, in pertinent part:

> The Company will be responsible for all main extensions where the cost of the extension does not exceed four (4) times the estimated average annual revenue from the new Applicant(s) whose service pipe(s) will immediately be connected directly to the extension and from whom the Company has received application(s) for service upon forms provided by the Company for this purpose. ***New Applicants shall be those who commit to purchase water service for at least one year, and guarantee to the Company that they will take water service at their premises within one hundred twenty (120) days after the date the Company accepts the main and determines it ready for Customer Service***[.]

(Emphasis added). Specifically, Water Company and DCM wanted a variance from the emphasized language above to increase the 120-day deadline to five years for new applicants.

Next, Water Company and DCM requested variances from the language of Rules 23.A.39 and 23.C.6, which describe how water main extensions were to be funded. The Rules state, in pertinent part:

> [Rule 23A.3] If the estimated cost of the proposed extension required in order to furnish general water service exceeds four (4) times the Company's estimate of average annual revenue from the new Applicant, the Applicant and Company shall fund the remaining cost (i.e., total cost less four (4) times the estimated average annual revenue from any new Applicant(s)) of the proposed water main extension ***at a ratio of 95:5 (i.e., 95% Applicant funded and 5% Company funded) for St. Louis Metro District***, and 86:14 (i.e., 86% Applicant funded and 14% Company funded) for all other districts.
>
> . . . .
>
> [Rule 23.C.6] Upon completion of the Main Extension, and prior to acceptance of the extension by the Company, the Applicant will provide to the Company a final statement of Applicant's costs to construct such extension. The final statement of costs will be added to the actual costs for

3

Company to provide services as per the Developer Lay Proposal. Upon acceptance of the main extension, the Company will then issue payment to the Applicant of *five percent (5%) (for St. Louis Metro District contracts) and fourteen percent (14%) (for all other district contracts)* of the total, final costs that exceed four (4) times the estimated average annual revenue pursuant to Provision A.2 and 3, above. . . .

(Emphasis added). Specifically, DCM and Water Company requested variances that would make them subject to the 86:14 funding ratio applicable to all districts other than St. Louis, as opposed to the 95:5 funding ratio applicable pursuant to the tariff.

DCM and Water Company submitted their joint application for the variances to the Commission pursuant to 20 C.S.R. 4240-2.060(4)(B), which requires that an application for a variance must include, among other requirements, "[t]he reasons for the proposed variance or waiver and a complete justification setting out the good cause for granting the variance or waiver[.]" DCM and Water Company listed several reasons to support their assertion "good cause" existed.[3]

The staff of the Commission filed a recommendation for the Commission to deny the requested variances from Rules 23.A.39 and 23.C.6, stating the Commission lacked

---

[3] The joint application first stated there was "good cause" for the variances because "the build-out of a development of such magnitude may not reasonably be expected to occur in 120 days, but is reasonably anticipated to occur over a 5-year period." Next, the application stated:

[B]ut for the territorial agreement filed between [Water District No. 2] and [Water Company] . . . for which DCM Land and its predecessors in interest received no notice, Cottleville Trails could be served by [Water District No. 2] and DCM Land would not be required to construct the water system in the development at its cost and contribute it to [Water Company] without a reasonable opportunity to recover the cost thereof[.]

Finally, the application asserted that if the variances were not granted, DCM would be required "to pay significantly higher development costs, and/or the home buyers in the Cottleville Trails subdivision to pay higher costs for their homes, than would result if water service were provided" by Water District No. 2.

authority to grant tariff variances and the funding-ratio variance would be unduly discriminatory. Water Company and DCM filed responses, stating the improvements DCM would make through the variances would also constitute good cause because planned main replacement "would improve fire protection in the area and provide water main access to several additional properties nearby."

The Commission granted the three requested variances to the tariff, finding good cause existed. Public Counsel then filed an application for rehearing, which the Commission granted. After the rehearing, the Commission issued a revised order, once again granting the three requested variances. Within the revised order, the Commission determined it had the statutory authority to grant a tariff variance and that good cause existed to do so. Public Counsel sought transfer after opinion by the court of appeals. This Court granted transfer and has jurisdiction. Mo. Const. art. V, § 10.

## Standard of Review

"Pursuant to [§] 386.510, appellate review of an order by the [Commission] is two-pronged: first, the reviewing court must determine whether the [Commission's] order is lawful; and second, the court must determine whether the order is reasonable." *Amend. of Comm'n's R. Regarding Applications for Certificates of Convenience & Necessity v. Mo. Pub. Serv. Comm'n*, 618 S.W.3d 520, 523 (Mo. banc 2021). "All questions of law, including whether statutory authority exists to support an order of the [Commission], are reviewed *de novo*." *Id.*

5

**Analysis**

Section 393.140 provides, in pertinent part:

***Unless the commission otherwise orders, no change shall be made in any rate or charge, or in any form of contract or agreement, or any rule or regulation relating to any rate, charge or service***, or in any general privilege or facility, which shall have been filed and published by a gas corporation, electrical corporation, water corporation, or sewer corporation in compliance with an order or decision of the commission, except after thirty days' notice to the commission and publication for thirty days as required by order of the commission, which shall plainly state the changes proposed to be made in the schedule then in force and the time when the change will go into effect. The commission for good cause shown may allow changes without requiring the thirty days' notice under such conditions as it may prescribe. ***No corporation shall charge, demand, collect or receive a greater or less or different compensation for any service rendered or to be rendered than the rates and charges applicable to such services as specified in its schedule filed and in effect at the time***; nor shall any corporation refund or remit in any manner or by any device any portion of the rates or charges so specified, nor to extend to any person or corporation any form of contract or agreement, or any rule or regulation, or any privilege or facility, except such as are regularly and uniformly extended to all persons and corporations under like circumstances. The commission shall have power to prescribe the form of every such schedule, and from time to time prescribe by order such changes in the form thereof as may be deemed wise. ***The commission shall also have power to establish such rules and regulations, to carry into effect the provisions of this subdivision, as it may deem necessary, and to modify and amend such rules or regulations from time to time.***

(Emphasis added).

"The [Commission] is a creature of statute and can function only in accordance with its enabling statutes. Its powers are limited to those conferred by statutes, either expressly or by clear implication as necessary to carry out the powers specifically granted." *Amend. of Comm'n's R.*, 618 S.W.3d at 524 (internal citations and quotations omitted). Section 393.140(11) controls a utility company's application of its Commission-approved tariff.

6

While DCM argues that this Court should adopt its interpretation of § 393.140(11) that would allow the Commission to make variances to a tariff by application, DCM ignores this Court's precedent interpreting the Commission's ability to grant such variances.

In *State ex rel. St. Louis County Gas Co. v. Public Service Commission of Missouri*, 286 S.W. 84, 85 (Mo. 1926), a group of St. Louis County residents petitioned for the Commission to avoid certain rules of the St. Louis County Gas Company's tariff pertaining to sharing the cost of gas main extensions. The Commission found the rules, as applied to the group of residents, to be unreasonable and ordered the installation of the extension. *Id*. The appeal to this Court raised the following issue:

> [W]hether the commission may in specific instances compel a gas corporation to make extensions and furnish service in violation of the rules relating to rates and charges which are on file with it and have its approval, express or implied, and which are applicable to the public as a whole.

*Id.* This Court found the Commission could not do so:

> A schedule of rates and charges filed and published in accordance with [the Public Service Commission Law] acquires the force and effect of law; and as such it is binding upon both the corporation filing it and the public which it serves. It may be modified or changed only by a new or supplementary schedule, filed voluntarily, or by order of the commission.

*Id.* at 86. In addition to binding the utility and the public, the tariff also binds the Commission. *Id.* Consequently, the Commission could "order the [tariff] modified" if it determined the rules and regulations to be unjust, but it could not "set them aside as to certain individuals and maintain them in force as to the public generally." *Id.*

This Court revisited the Commission's ability to grant variances to a tariff in *State ex rel. Kennedy v. Public Service Commission*, 42 S.W.2d 349 (Mo. 1931). In *Kennedy*, a

7

group of residents sought for the Commission to force the St. Louis Water Company to install water mains to their properties. *Id.* at 349. The tariff had a rule setting forth how the extension would be funded. *Id.* at 349-50. That rule also contained the following clause: "In exceptional cases, where extensions are requested under conditions which may appear to warrant departure from the above rules, the cost of such extensions, if requested and desired by the company, shall be borne as may be approved by the [Commission]." *Id.* at 350. This "exceptions clause" specifies that the utility could request departure from this rule in exceptional cases when conditions warrant departure from the rule, subject to approval by the Commission. *Id.* The residents sought the funding rule to be abrogated and replaced with a rule that the utility would be required to make extensions at its own expense that would not become a burden. *Id.* This Court found the existing rule to be reasonable and lawful. *Id.* at 351. It also addressed the exception clause, holding, "Without some such provision in the [tariff's] rule the [C]ommission could not authorize the company to make an exception in the application of its approved rule." *Id.* at 353.[4]

Because there is no language in the rule that allows for a variance, the Commission does not have the authority to grant a variance from the rule. Consequently, the

---

[4] Rule 2C in this case is not enough to give the Commission authority to grant a variance pursuant to *Kennedy*. Rule 2C, contained under the general provision of the tariff, provides: "The Company may, subject to the approval of the Commission, prescribe additional rates, rules or regulations or to alter existing rates, rules or regulations as it may from time to time deem necessary or proper." In this case, the Commission purported to grant a variance under Rule 23. Conversely, in *Kennedy*, the "exceptions clause" was contained in the Rule under which the Commission granted a variance. A general provision, not contained in the rule under which the Commission purports to grant a variance, is not enough to give the Commission authority to grant an exception.

Commission's order has exceeded its legal authority. *See St. Louis County Gas*, 286 S.W. at 86; *Kennedy,* 42 S.W.2d at 352-53.

### Conclusion

For the foregoing reasons, the Commission's order is reversed and remanded to the Commission to enter a new order consistent with this opinion.[5]

 

 

_____
Zel M. Fischer, Judge

Russell, C.J., Powell, Breckenridge,
Ransom and Wilson, JJ., concur.
Draper, J., not participating.

---

[5] Because this Court reverses and remands, there is no need to address the other issues presented.